# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

JAMES LONGORIA,      )
     )
         Petitioner,      )
     )
         v.      )      C.A. No. 2018-0190-JTL
     )
CHARLES SOMERS, AS TRUSTEE OF      )
THE CHARLES SOMERS LIVING      )
TRUST DATED NOVEMBER 2002,      )
     )
         Respondent,      )
     )
         and      )
     )
LC THERAPEUTICS, INC.      )
     )
         Nominal Respondent.      )

## MEMORANDUM OPINION

Date Submitted: May 10, 2019
Date Decided: May 28, 2019

Brian M. Gottesman, David B. Anthony, BERGER HARRIS LLP, Wilmington, Delaware; *Attorneys for Petitioner James Longoria*.

Donald J. Wolfe, Jr., Matthew E. Fischer, Tyler J. Leavengood, Callan R. Jackson, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; William R. Warne, Annie S. Amaral, DOWNEY BRAND LLP, Sacramento, California; *Attorneys for Respondent Charles Somers, as Trustee of the Charles Somers Living Trust Dated November 2002*.

Donald F. Parsons, Jr., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Receiver for LC Therapeutics, Inc*.

**LASTER, V.C.**

The receiver for an insolvent corporation has incurred expenses and will need to incur additional expenses, but the corporation has no liquid assets, and it is unclear whether a sale of its other assets will generate enough funds to cover the costs of the receivership. The receiver has asked whether he can tax the interim expenses against the parties as costs and, if the winding up process fails to generate sufficient funds, tax any remaining expenses against the parties.

The petitioner owns fifty percent of the corporation's shares, and the respondent owns the other fifty percent. The respondent has agreed to pay half of the costs of the receivership.

The question presented is whether the court can tax the remaining costs of the receivership against the petitioner. Under venerable and still-controlling Delaware Supreme Court authority, the answer is yes. The receiver is granted authority to tax the petitioner with half of the expenses that he has incurred and will incur.

## I. FACTUAL BACKGROUND

LC Therapeutics, Inc. (the "Company") was formed in 2013 to develop and exploit certain intellectual property (the "Patents"). The petitioner, James Longoria, owns 50% of its common stock and claims to be its sole director. He says he invented the Patents and contributed them to the Company. The respondent, Charles Somers, owns the other 50%

of the Company's common stock, and he claims that he is also a director.[1] The parties agree that Somers has made significant capital contributions to the Company.

The two principals deadlocked on various issues, including how to fund the Company. In March 2018, Longoria filed a petition for dissolution. In May, Longoria moved to approve a proposed plan of dissolution and to have himself appointed as trustee to oversee the winding up process. In July, the parties stipulated to a case schedule contemplating a trial in six months.

In August 2018, Longoria pre-empted the trial schedule by moving for the adoption of an amended plan of dissolution that would have appointed Somers as trustee to carry it out. Dkt. 19. As justification, Longoria cited the need to preserve the Patents. *Id.* ¶ 19. In response, Somers did not dispute the existence of a deadlock or the need for dissolution, but he opposed Longoria's plan. Somers wanted a third-party receiver.

After reviewing the papers, I held a teleconference with counsel during which I encouraged the parties to build on their areas of agreement. In a follow-up letter, I suggested two, non-exclusive paths that might help resolve the case.

> One alternative would be for the court to appoint a special master whose task would be to value the patent portfolio. The cost of the special master's work would be taxed against the parties. The result of the special master's work would provide insight into whether appointing a third-party receiver is a viable option. I suspect that the cost of having a special master value the portfolio could be less than the cost of adversarial discovery and a trial.

---

[1] Somers appears in his capacity as trustee of the Charles Somers Living Trust, dated November 2002, and he owns the shares in that capacity. For simplicity, this decision refers simply to Somers.

> Another alternative would be to appoint a receiver now. Because the receiver would not have the benefit of a valuation to help assess whether the company could cover the receiver's fees, I would want to offset the risk by including an incentive-based upside component in the receiver's compensation. A third alternative, as the respondent has proposed, would be to address the downside risk to the receiver by having any unpaid fees taxed against the parties as costs.

Dkt. 25 at 2. I asked the parties to report back within thirty days. I noted that in the meantime, the parties needed to prepare for trial. *Id.*

The parties subsequently agreed to have former Vice Chancellor Donald F. Parsons, Jr. serve as receiver. But they were unable to agree on (i) the scope of his authority, (ii) the process he should follow, or (iii) the amount of his compensation. After receiving submissions from the parties, I entered an order that drew from both sides' proposals. On the issue of compensation, the order provided that the fees of the receiver, his counsel, and any third-party advisors were administrative expenses of the receivership with priority over all other obligations of the Company. The order provided that "[i]n the event the proceeds are insufficient to cover the Receiver's unpaid fees and expenses, the Receiver may seek to have these unpaid fees and expenses taxed against the parties as costs." Dkt. 31 ¶ 8.

After assuming his duties, the receiver engaged a patent prosecution firm to maintain the Patents. He also determined that it would cost approximately $40,000 to obtain a valuation of the Patents, and he contacted two firms about conducting a sale process. After considering the alternatives, he decided to proceed directly with a sale process and engaged one of the firms. He also took steps to complete the Company's tax filings for 2017 and 2018, which the principals had not been able to file because of their deadlock.

At this point, Longoria objected to the receiver incurring any expenses to sell or maintain the Patents, arguing that they were worthless. That contention was contrary to his position regarding the value of the Patents earlier in the litigation, when he insisted on the need to maintain them.

The receiver faced a quandary. The Company did not have the liquid assets to maintain the Patents or fund a sale process, and the Company did not have any realistic sources of financing other than its principals. Although both principals had agreed to pay the professional fees and expenses incurred by the receiver and his counsel, they had not agreed to fund the expenses necessary to maintain the Patents or carry out a sale.

The receiver determined that he needed to authorize some immediate expenditures to maintain the Patents. Somers advanced a retainer of $10,000 to cover those expenses. He committed to pay 50% of the expenses himself and asked the receiver to seek the other half from Longoria. Longoria, meanwhile, continued to maintain that the Patents had no value and refused to fund any expenses. The receiver used the retainer from Somers to make payments to third-party professionals in the amount of $6,288.93.

With the parties unable to agree, the receiver petitioned the court for a ruling on whether he could tax the expenses of the receivership to the parties as costs. The expenses currently consist of (i) payments to third-party professionals for patent maintenance expenses in the amount of $6,288.93, and (ii) anticipated sale process expenses of approximately $25,000. These amounts are in addition to the fees and expenses of the receiver and his counsel, which the parties have agreed to pay.

4

The parties provided submissions addressing the merits of the receiver's request. In his submission, Somers agreed to pay 50% of the expenses of the receivership, so the only issue is whether the remaining 50% can be taxed against Longoria. In his submission, Longoria agreed to pay half of the expenses related to the preparation and filing of the 2017 and 2018 tax returns, as well as half of the expenses necessary to prepare and file the certificate of dissolution. He did not commit to pay any expenses required to maintain or sell the Patents.

## II.     LEGAL ANALYSIS

The general rule is that "a receiver's compensation and expenses are payable from the funds in his hands, and no part is taxable against the party at whose instance the receiver was appointed." *Brill v. Southerland*, 14 A.2d 408, 413 (Del. 1940). But an exception exists: "Where there is no fund out of which expenses can be paid, or the fund is insufficient, the usual rule is that the party at whose instance the receiver was appointed should be required to provide the means of payment." *Id.*; *accord Leslie v. Telephonics Office Techs., Inc.*, 1993 WL 547188, *13 (Del. Ch. Dec. 30, 1993) (Allen, C.) (imposing costs of receivership on parties seeking it); 3 Edward P. Welch et al., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 291.09, at 11-18 (6th ed. Supp. 2018-3); Donald J. Wolfe, Jr. & Michael A. Pittenger, CORPORATE & COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 10.05[e], at 10-74 (2d ed. 2018).

The Delaware rules accord with black-letter law. "Just as the determination of the amount of a receiver's compensation is a matter within the discretion of the trial court, so too is a determination of who should bear the expenses associated with the receivership . .

5

. ." 75 C.J.S. *Receivers* § 464, Westlaw (database updated Mar. 2019). "In the absence of statute, the receivership expenses may be adjudged against one or the other of the parties or apportioned between them in the discretion of the court." *Id.* § 364.

> Although in proper cases for the appointment of a receiver the property or fund in the hands of the receiver is ordinarily and primarily liable for the expenses of the receivership . . . , following the more general rule, and in the absence of statutes relating to receivership expenses, such expenses should in all cases, as between the parties, be ultimately adjudged on equitable principles . . . .

*Id.* (footnote omitted); *accord* 16 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 7914, Westlaw (database updated Sept. 2018). *See generally* J.N.P., Annotation, *Liability of One Procuring Appointment of Receiver for Expenses of Receivership*, 68 A.L.R. 878 (2019) (collecting cases).

In his correspondence with the receiver, Longoria contended that he could not be compelled to pay any of the expenses of the receivership because "[n]either any document governing the Company's operations, nor Delaware law governing the relations between Dr. Longoria, as a director and shareholder of the Company, requires Dr. Longoria, in such capacity, to contribute personal assets to the continued operation of the Company." Dkt. 36, Ex. C at 2.

It is true that stockholders are not ordinarily liable for the debts of the firm in their capacity as stockholders, at least absent a charter provision authorized by Section 102(b)(6) of the Delaware General Corporation Law, 8 *Del. C.* § 102(b)(6), or facts sufficient to pierce the corporate veil. But the critical phrase is "in their capacity as stockholders." Recognizing that stockholders who pursue litigation also act in their capacity as litigants,

6

the Delaware Supreme Court has held that a fee-shifting bylaw can impose liability on stockholders for litigation expenses that otherwise would be debts of the corporation. *See ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 557–59 (Del. 2014). Although the Delaware General Assembly subsequently adopted legislation foreclosing Delaware corporations from adopting fee-shifting provisions in their constitutive documents, *see* 8 *Del. C.* § 102(f), the reasoning of *ATP* demonstrates that that when a stockholder chooses to litigate, the stockholder can be held liable as a litigant for expenses associated with the proceeding, even if those expenses otherwise would be debts of the corporation. Consistent with the logic of *ATP*, a stockholder who litigated against a corporation and lost would not have any special immunity *qua* stockholder to an award of costs under Rule 54(d), simply because the costs otherwise would be a debt of the corporation. Nor would a stockholder who litigated in bad faith against a corporation have any special immunity *qua* stockholder to the corporation's application for fee shifting under the bad-faith exception to the American Rule, simply because the fees otherwise would be a debt of the corporation.

In this case, although Longoria is a stockholder, he is also a litigant. Not only that, he is the petitioner who sought the receivership. *See* Dkts. 7 & 19. In those capacities, he can be taxed with the expenses of the receivership, consistent with the authorities cited above. The same reasoning defeats Longoria's contention that he cannot have liabilities imposed on him simply because he is a director. The short answer is that no liabilities are being imposed on him in that capacity. They are being imposed on him as a litigant in this proceeding and as the petitioner who sought the receivership.

Longoria has also made fact-specific arguments against being required to bear the expenses of the receivership. First, he asserts that Somers was supposed to provide the funding for the Company's operations and reneged on that promise, so it would be unfair to require him to provide funding for a receivership necessitated by Somers' breach. Second, he points out that he proposed a plan of dissolution in which he would have served as the trustee, thereby avoiding the need to pay fees to a third party. Third, he argues that Somers has sued him in California and that he needs money to defend himself there. Fourth, he argues that he has an indemnification agreement with the Company in his capacity as a director that requires the Company to bear his expenses, not the other way around.

Longoria's first and last arguments have a similar tenor. If Longoria has a contractual claim against the Company for indemnification, he can present that claim as part of the receivership process. If necessary, the claim can be litigated and reduced to judgment. Longoria then will be entitled to recover *pari passu* with other creditors of similar priority. His potential contractual claim is not a reason to allocate the expenses of the receivership differently. *See* Wolfe & Pittenger, *supra*, § 10.05[e], at 10-73 ("[A] receiver's compensation and expenses are entitled to some priority and are 'to be paid *first* out of the assets' of the receivership estate." (quoting 8 *Del. C.* § 298)).

By the same token, if Longoria has claims against Somers based on a commitment Somers made to fund the Company, he can pursue those claims and seek to recover damages. Perhaps his damages award could include the costs of an otherwise unnecessary receivership. But that is an issue for a plenary action between Longoria and Somers. It should not complicate the receivership proceeding in this court.

The existence of the California litigation is also not a reason to give Longoria a free pass on the cost of the receivership. It is doubtless frustrating for Longoria to be involved in other litigation, but that is a financial commitment separate and apart from the receivership proceeding. If anything, the California proceeding may offer Longoria the forum he seeks to purse his claims against Somers.

The fact that Somers did not accept Longoria's proposal to serve as trustee is also not a reason to forego imposing expenses on Longoria. When Longoria filed the petition, he knew and alleged that he and Somers were deadlocked. It was hardly likely that Somers would agree to permit Longoria to serve as trustee. It was highly likely that a third-party receiver would be necessary. That was a foreseeable cost of the receivership, and Longoria should have been prepared to bear it. And even if one of the parties had been appointed, Longoria still would have been the petitioner seeking a receivership and thus still could have been taxed for the associated costs.

## III. CONCLUSION

Longoria is taxed in the amount of $5,000, representing half of the retainer in the amount of $10,000 for expenses related to patent maintenance. The receiver shall pay this amount over to Somers to reimburse him for advancing the full amount of the retainer. Until the conclusion of this matter, unless the anticipated sale process generates a pool of funds, the costs of third-party professionals retained by the receiver, including any required upfront payments or retainers, shall be taxed equally against the parties. To the extent practicable, the receiver shall follow the same reporting and approval process for third-party fees and expenses as currently prescribed for the receiver's own fees and expenses.

9